IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Virginia

```
_____
UNITED STATES OF AMERICA,     )
                              )
V.                            )
                              )
                              )   Criminal Case No. 1:15CR59
ELVIS ARNOLDO LOPEZ GALCIA,   )
                              )
             Defendant.       )
                              )
_____)
```

**MEMORANDUM OPINION**

This matter comes before the Court on the Defendant's Motion to Dismiss.

Defendant Elvis Arnoldo Lopez Galicia has moved to dismiss the indictment pending against him. The Defendant, who was removed in June 2012 following an immigration judge's determination that he had committed an aggravated felony and was deportable pursuant to 8 § 1227(a)(2)(A)(iii), claims that a subsequent change of law has rendered his prior removal a violation of due process. He thus contends that the instant prosecution must be dismissed.

The Defendant, however, must make a three-part showing in order to successfully mount a collateral attack on his removal order. Specifically, he must show by a preponderance of the

evidence that (1) he exhausted any administrative remedies that were available with respect to the removal order, (2) the deportation proceedings that resulted in the issuance of the removal order improperly deprived him of judicial review, and (3) the removal order was fundamentally unfair. The Defendant has not met his burden with respect to any of these elements.

Born in El Salvador, the Defendant has never been a national or citizen of the United States. He entered the United States in 2005 as a lawful permanent resident after his stepmother, a citizen of the United States, petitioned for his admittance. Thereafter, the Defendant settled in Northern Virginia.

On April 6, 2011, the Defendant was convicted in Fairfax County for committing unauthorized use of a vehicle, in violation of Virginia Code § 18.2-102. He was sentenced to a term of two years of incarceration, all of which was suspended.

Immigration and Customs Enforcement ("ICE"), an agency housed under the Department of Homeland Security, then initiated removal proceedings against the Defendant. An immigration court in Arlington, Virginia, held deportation proceedings on May 8, 2012, and determined that the Defendant was removable because his conviction for unauthorized use of a vehicle was an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). The immigration court further found that

2

the Defendant was not entitled to asylum under the Convention Against Torture, and the court ordered him deported. A Spanish interpreter appeared at the hearing and translated the proceedings for the Defendant.

At the conclusion of the May 8 hearing, the immigration court advised the Defendant that he could appeal the deportation order to the Board of Immigration Appeals ("BIA"). The immigration court also informed the Defendant that he could have an attorney assist him with the appeal but noted that he likely would remain detained during the appellate process. The Defendant responded by indicating that he wished to waive his appellate rights because he had no additional evidence to present and his family needed him to no longer be detained. When the immigration court repeated its query as to whether the Defendant wished to waive his appellate rights, the Defendant again confirmed that he did not want to appeal the court's deportation order.[1]

Approximately thirty-four days later, the Defendant was removed from the United States by way of Alexandria, Louisiana, and was transported to El Salvador. There is no indication in the documentation received to date that the Defendant sought relief from his removal.

---

[1] The facts regarding Defendant's express waiver of his appellate rights are drawn from the audio recordings received from the Executive Office of Immigration Review ("EIOR").

3

Sometime thereafter, the Defendant voluntarily and illegally reentered the United States without obtaining permission from the Attorney General or the Secretary of Homeland Security to reapply for readmission to the United States. He then was arrested in Fairfax County, Virginia, on or about January 30, 2015, for possessing marijuana, in violation of Virginia Code § 18.2-250.1, and falsely identifying himself to law enforcement, in violation of Virginia Code § 19.2-82.1. Fairfax County released the Defendant before ICE could take custody of him, and the Defendant later was found guilty of these charges in absentia.

On February 26, 2015, a federal grand jury in the Eastern District of Virginia indicted the Defendant on one count of illegal reentry following an order of removal, in violation of 8 U.S.C. § 1326(a). The Defendant eluded the U.S. Marshals Service and ICE for over a year, and was not finally apprehended until March 31, 2016.

The Defendant now seeks dismissal of the indictment that has been filed against him. Asserting a defense under § 1326(d), the Defendant claims that his decision to waive his appellate rights and failure to seek judicial review should not preclude his motion to dismiss because he was uncounseled and did not understand his legal remedies. Further, the Defendant claims that the immigration court's removal order was

fundamentally unfair because a subsequent Fourth Circuit decision determined that Virginia's prohibition on unauthorized use of a vehicle does not constitute an aggravated felony.

A valid order of removal is an element of the offense of illegal reentry under 8 U.S.C. § 1326(a). See United States v. Mendoza-Lopez, 481 U.S. 828, 838-39 (1987). Although a criminal defendant may collaterally attack the propriety of a prior removal order, he may do so only if he satisfies the requirements set forth in 8 U.S.C. § 1326(d). That is, a defendant must show the following with respect to the underlying removal order:

> 1) The defendant exhausted any administrative remedies that may have been available to seek relief against the order;
>
> 2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> 3) the entry of the order was fundamentally unfair.

Id. The latter requirement—the fundamental unfairness of the deportation order—requires the defendant to make two additional showings: "that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." United States v. Wilson, 316 F.3d 506, 510 (4th Cir. 2003), overruled on other

5

grounds by Lopez v. Gonzales, 549 U.S. 47 (2006). Further, the defendant must show actual prejudice. That is, "but for the errors complained of, there was a reasonable probability that he would not have been deported." United States v. El Shami, 434 F.3d 659, 665 (4th Cir. 2005).

The burden of proof in a collateral attack upon a removal order rests with the defendant. See, e.g., Wilson, 316 F.3d at 509; see also United States v. Arevalo-Tavares, 210 F.3d 1198, 1200 (10th Cir. 2000) (explaining that the burden rests with the defendant in light of the presumption of regularity that attaches to a final removal order). Moreover, the Defendant must meet his burden under § 1326(d) by a preponderance of the evidence. See Richardson v. United States, 558 F.3d 216, 222 n.5 (3d Cir. 2009) ("Given the civil nature of deportation proceedings, an alien seeking to demonstrate the invalidity of a written waiver will be held to a 'preponderance of the evidence' standard."); United States v. Martinez-Amaya, 67 F.3d 678, 682 n.5 (4th Cir. 1995) (suggesting in *dicta* that preponderance of the evidence is the "appropriate" standard where an alien collaterally attacks a prior deportation). Finally, because these requirements are listed in the conjunctive, the defendant must satisfy all of the requirements for his collateral attack to succeed. See United States v. Ortiz, 488 F. App'x 717, 717-18 (4th Cir. 2012); Wilson, 316

6

F.3d at 509.

The Defendant cannot satisfy the requirements of 8 U.S.C. § 1326(d). He neither exhausted his administrative remedies nor sought judicial review of his removal order. Even though the Defendant lacked counsel at his deportation hearing, the Defendant was sufficiently advised of his right to appeal the immigration judge's removal order. Moreover, the Defendant has not met his burden of showing that the immigration court's removal order amounted to a violation of due process. Although Virginia's prohibition of unauthorized use of a vehicle no longer qualifies as an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), this was not the law at the time the immigration court issued its removal order, and the court was not required to anticipate a future change in the law.

Following the immigration court's entry of the order removing the Defendant from the United States, the Defendant had multiple options for challenging the court's determination. For instance, he could have asked the immigration court to reconsider its decision or appealed the court's determination to the BIA. See 8 C.F.R. §§ 1003.23 & 1003.38. Yet, the Defendant took no such action.

A defendant's failure to exhaust his administrative remedies or otherwise seek judicial review ordinarily would prove fatal to his invocation of § 1326(d). This is because the

7

exhaustion requirement of § 1326(d)(1) is a statutory creation and thus must be strictly construed. See United States v. Gonzalez-Roque, 301 F.3d 39, 47 (2d Cir. 2002). As the Seventh Circuit has explained, § 1326(d) "requires exhaustion, not excuses." United States v. Larios-Buentello, 807 F.3d 176, 177 (7th Cir. 2015). If a defendant could have, but did not, challenge his removal order prior to the initiation of a prosecution for unlawful reentry, then he may not avail himself of § 1326(d) to defeat the charge.

The Defendant counters that his lack of legal representation at his deportation proceedings and the speed with which he was deported counsels a different result. The Defendant acknowledges that he waived an appeal of the immigration court's order and did not seek other judicial relief. Yet, he argues that such review was not "realistically" available because he "was uncounseled, relatively unsophisticated, and did not understand his waiver," and was deported approximately one month after the detention order was entered.

As an initial matter, the Defendant has not met his burden of establishing these claims. He cites to no document or fact in support of the proposition that he neither knowingly nor intelligently waived his administrative appellate rights nor had an inability to seek other judicial relief. Such bare assertions

8

cannot support a finding that the Defendant satisfied § 1326(d)(1) or (d)(2) by a preponderance of the evidence.

Further, the records the Government has received to date indicate that the Defendant has no basis for claiming that his appellate waiver was unknowing or involuntary. The audio recordings of the Defendant's deportation proceeding reveal that the immigration court carefully advised the Defendant, first in English and then in Spanish, of his right to appeal and right to appellate counsel. Yet, the Defendant expressly chose to waive those rights.

This case thus is unlike United States v. Sosa, 387 F.3d 131 (2d Cir. 2004), the case the Defendant cites for the proposition that a defendant's waiver of administrative review is effective only if the waiver is given knowingly and intelligently. Rather, it is more akin to United States v. Claudillo-Marquez, 165 F. App'x 43 (2d Cir. 2006). There, the Second Circuit explained that the rationale of Sosa is inapplicable where an immigration court, in fact, advises an alien of his eligibility for appellate relief. Id. at 45-46.

That the immigration court did not provide the Defendant with every nuance of the appellate process does not change the calculus either. An immigration court need not advise an alien of all the methods for challenging a deportation order. Rather, a general advisement of appellate rights is sufficient to put

9

an alien on notice that further judicial remedies may be available. See United States v. Lopez-Solis, 503 F. App'x 942, 946 (11th Cir. 2013) (approving the "persuasive holding" in United States v. Lopez, 445 F.3d 90 (2d Cir. 2006), "that, in an ordinary case, the receipt of a final order of removal puts an alien on notice to look for remedies of that order"); Lopez, 445 F.3d at 96 ("It is true that the administrative nature of the removal proceedings may not lead an alien to look outside the administrative arena for relief, but this does not alter the fact that where judicial remedies are readily available in case law and statutes, due process is not offended where no notice of those remedies is provided."); United States v. Escobar-Garcia, 893 F.2d 124, 126 (6th Cir. 1990) (affirming a § 1326 conviction where the defendant was informed during the course of his immigration proceedings generally of his right to appeal but not his right to judicial review); *but see United States v. Santos-Vanegas*, 878 F.2d 247, 251 (8th Cir. 1989) (failure to advise alien of right to seek deportation relief in federal court precludes § 1326 prosecution).

Similarly unavailing is Defendant's claim that he had insufficient time to file an appeal. The Defendant cites United States v. Copeland, 376 F.3d 61 (2d Cir. 2004), for the proposition that judicial review is unavailable where the interval between the entry of a deportation order and physical

10

deportation is too brief. The circumstances of this case, however, differ materially from those in Copeland. Central to Copeland was that (1) the defendant had fulfilled the exhaustion requirement of § 1326(d) by moving to reopen his deportation hearing and appealing the denial of that motion, and (2) there was legal uncertainty as to the availability of habeas relief. *Id.* at 67-69. Conversely, the Defendant here has neither exhausted his administrative remedies nor proffered why obtaining judicial relief before now was legally uncertain.

In short, the Defendant cannot be said to have exhausted his administrative remedies or been deprived of the opportunity for judicial review. Despite not being removed until four days *after* his thirty-day window for appealing expired, the Defendant made no attempt before or after his removal to appeal his deportation. The Defendant thus has not met his burden of satisfying the exhaustion requirement of § 1326(d)(1) or the deprivation requirement of § 1326(d)(2).

To establish a "fundamental unfairness," the "defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." Wilson, 316 F.3d at 510. The Defendant's sole contention with respect to fundamental unfairness is that the immigration court violated his due process rights by not anticipating the Fourth Circuit's

ruling in Castillo v. Holder, 776 F.3d 262 (4th Cir. 2015), and instead treating his conviction for unauthorized use of a vehicle as an aggravated felony.

The courts that have addressed this issue, however, have rejected the Defendant's argument. The Third, Fifth, Seventh, and Ninth Circuits have concluded that changes in the interpretation of immigration laws do not apply retroactively, and thus do not affect the propriety of earlier-in-time deportations. See United States v. Baptist, 759 F.3d 690, 697-98 (7th Cir. 2014) ("Though the law has since changed and Baptist's possession offenses no longer constitute aggravated felonies . . . , the law in effect at the time of Baptist's challenged removal is what matters to our analysis."); United States v. Galvan-Escobar, 151 F. App'x 327, 329-30 (5th Cir. 2005) (per curiam) ("Galvan's challenge relies solely upon a change in the law subsequent to his removal proceedings, which by all accounts in the record were fairly conducted under the state of the law at the time. Therefore, we find no reason to retroactively apply the new interpretation of the statutory language . . . to Galvan's prior deportation order."); United States v. Torres, 383 F.3d 92, 104 n.14 (3d Cir. 2004) ("We are extremely reticent to treat as fundamentally unfair an administrative official's failure to predict that binding law will change."); Alvarenga-Villalobos v. Ashcroft, 271 F.3d 1169, 1172-73 (9th Cir. 2001)

(explaining that a removal order that was lawful when it was entered is not invalidated by a subsequent change in law). As the Fifth Circuit has explained, this principle reflects the "particularly strong interest" that exists "in the finality of immigration proceedings." Galvan-Escobar, 151 F. App'x at 30 n.4; cf. Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 758 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed.").

Thus, under established precedent, if an immigration judge's decision is "in accordance with the then-reigning interpretation of the law," then a defendant asserting a § 1326(d) defense cannot satisfy the fundamental unfairness prong on the mere basis of a subsequent change in the law. Torres, 383 F.3d at 104; cf. Ovalles v. Holder, 577 F.3d 288, 299 (5th Cir. 2009) (per curiam) (no due process violation where BIA refuses to consider motion to reopen removal proceedings even though offense underlying removal was later determined not to be an aggravated felony).

Here, as the Defendant seems to concede, the claimed error is one of statutory interpretation. The immigration judge concluded that the Defendant's conviction for unauthorized use of a vehicle constituted an aggravated felony. Then, nearly three years later, the Fourth Circuit reached the opposite conclusion. See Castillo, 776 F.3d at 270. The circumstances

13

of this case thus fit squarely within the decisions of the Third, Fifth, Seventh, and Ninth Circuits. The immigration court rendered a deportation decision in conformity with the law as it existed in 2012, and the mere fact that the Fourth Circuit subsequently interpreted the law differently does not retroactively render the Defendant's deportation fundamentally unfair for purposes of § 1326(d)(3).

For the foregoing reasons the Defendant's Motion be denied. An appropriate Order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
July 26, 2016